[Crim. No. 3372.   First Dist., Div. One.   Apr. 18, 1958.]

THE PEOPLE, Respondent, v. ROBERT WITT, Appellant.

494

Herbert J. Callman, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Frank Campbell, Deputy District Attorney, for Respondent.

PETERS, P. J.—Defendant was found guilty by a jury of second degree burglary. He appeals from the judgment entered on that verdict and from the order denying his motion for a new trial.

The burglary involved occurred on October 29, 1956, between the hours of 1 and 4:45 p. m. It was of the apartment of Mr. and Mrs. Mah on Pine Street in San Francisco. During those hours the Mahs were out of their locked apartment. When Mr. Mah returned about 4:45 p. m., he discovered that it had been entered and ransacked during his absence. Two sets of silverware, a clock radio, a toy cash register containing about $50, a .41 Colt revolver, a nickel-plated .32 revolver, and a plaid handbag were missing. A metal box in the bedroom had been forced open and was lying in the middle of the bedroom floor.

The defendant was connected with the crime under the following circumstances: On October 30, 1956, at about 3:15 p. m. two San Francisco police inspectors observed one Albert Cibrian, known to the inspectors as an addict and thief and wanted as a burglary suspect, beside an automobile, later identified as the car of defendant, on Turk Street near Larkin in San Francisco. After Cibrian had walked away from the car the two inspectors took him into custody. Cibrian told

the officers there was some "hot stuff" and guns in the automobile in question. The officers took Cibrian to a nearby police station and then returned to the vicinity of the automobile, and observed that defendant and one Ayaya or Ayala were sitting in the vehicle. Defendant was in the front seat behind the wheel, and Ayaya in the rear. The two officers approached the car cautiously and with drawn guns. They ordered the two men out of the car. Upon looking into the car they observed a loaded .38 caliber automatic under the front seat and found some white powder and a hypodermic needle in the glove compartment. The defendant admitted that the automobile belonged to him. Then, and not until then, the two men were placed under arrest. The trunk of the automobile was then searched. Inside were found a plaid handbag, one set of Mr. Mah's silverware, a blackjack, a Biretta automatic and a frontier type revolver. When defendant was told by one of the officers about what had been found in the trunk, he first denied knowing anything about the articles. Later he stated that he had bought the articles from a man in the Mission District for $20 on the morning of October 30th. Later he stated "I deny all the stories."

In Mah's apartment a fingerprint was discovered on a black metal box. A fingerprint expert identified this print as that of appellant, stating that the identification was absolute.

At the trial defendant testified that he was home with his mother in Belmont on October 29th, and did not leave the house all day; that on the morning of the 30th he drove to San Francisco and met Cibrian and Ayaya, and the three drove around the city, never going near Mah's apartment. He disclaimed all knowledge of the articles found in the trunk of his car, and stated that he did not know the gun was under the front seat. He testified that at one time during the day Cibrian was left alone in the car in the Fillmore district. Defendant admitted that the first two stories he had told the police were untrue.

On this evidence the jury, after but 18 minutes of deliberation, found defendant guilty of second degree burglary.

Appellant's main contention is that all of the articles found in his car were procured as the result of an illegal search and seizure, and were, therefore, erroneously admitted into evidence. This point was raised at the trial, and a motion

to exclude the evidence made. The trial court overruled the objection, denied the motion, and admitted the evidence.

Appellant's argument is that he did not consent to the search of the vehicle, and that the officers did not have a search or an arrest warrant and did not have reasonable or probable cause to search the car. Appellant correctly points out that Cibrian cannot be considered to be a reliable informant because the record does not show that he had given the police information before, and was thus an unproven source of information. At most, so it is argued, the police acted on mere suspicion based upon the voluntary statement of Cibrian. It is argued that the mere suspicion that there might be stolen goods in the automobile did not justify the officers in arresting the occupants without further investigation.

The difficulty with this argument is that the police did not arrest the appellant and his companion solely upon the information secured from Cibrian. They did not arrest appellant and Ayaya until they had ascertained that there was a gun and a narcotic outfit in the car.

The basic question is, did the officers act reasonably? It is clear that they did. They arrested Cibrian, a known addict and thief, who was wanted for questioning. They had just seen Cibrian in close proximity to the car occupied by appellant and Ayaya. Cibrian told them that there were guns and stolen goods in the car. The automobile was, of course, mobile, and might move from the area at any moment. While the officers would not have acted reasonably had they, solely on Cibrian's information, arrested appellant and Ayaya and then searched the car, common sense and prudence required them to investigate. Had they not done so they would have been derelict in their duty. They approached the automobile cautiously, because they had been told there were guns in the car. They ordered appellant and Ayaya to get out of the vehicle. This was certainly a reasonable and lawful thing to do. Then they made a precautionary search for weapons. This, too, was reasonable and lawful. They found a loaded revolver under the front seat and a narcotic outfit in the glove compartment. This, of course, confirmed their suspicions. They now had reasonable and probable cause to believe that the occupants of the car were committing a felony. Then, and not until then, the arrest was made. Then, after this lawful arrest, and incidental thereto, they certainly acted as reasonable officers in searching the trunk.

Here some of the stolen goods were found. Thus, the arrest and search were not illegal. (See generally *People* v. *Martin*, 46 Cal.2d 106 [293 P.2d 52] ; *People* v. *Jiminez*, 143 Cal.App. 2d 671 [300 P.2d 68].)

It is next contended that reversible error was committed in admitting into evidence the .38 automatic, the blackjack and the Biretta automatic. These articles were not connected with the burglary involved, and, had proper objection been made, should not have been introduced into evidence. (*People* v. *Richardson*, 74 Cal.App.2d 528 [169 P.2d 44] ; *People* v. *Riser*, 47 Cal.2d 566 [305 P.2d 1] ; *People* v. *Borbon*, 146 Cal.App.2d 315 [303 P.2d 560].) But here proper objection was not made. One of the inspectors testified that he had found these articles when the car was searched. No objection was made to this testimony. Then when these articles were offered into evidence the sole objection was on the ground of unlawful search and seizure. Having failed to object on the ground of relevancy, appellant is precluded from raising the point on appeal. (*People* v. *Millum*, 42 Cal. 2d 524 [267 P.2d 1039] ; *People* v. *Dessauer*, 38 Cal.2d 547 [241 P.2d 238] ; *People* v. *McMonigle*, 29 Cal.2d 730 [177 P.2d 745.) One revolver—the Colt—found in the search was clearly admissible. It was one of the guns stolen from the Mahs' apartment. The evidence of guilt was very strong. Thus, no prejudicial error was committed.

Appellant next contends that the trial judge improperly suppressed the testimony of Cibrian by intimidating him. This serious charge against the trial judge is not only not supported by the record, but is contrary thereto. Cibrian had also been charged with the burglary here involved. He was awaiting trial on that offense. Early in the trial, on the issue of the reasonableness of the search, on *voir dire,* Cibrian was called as a defense witness and denied having told the officers that appellant's car contained stolen property and guns. Before he so testified he asked to consult with his attorney, the public defender. A recess was taken to summon the attorney. Mr. Postel appeared. He informed the court that, although he was not the deputy assigned to the case, he had consulted with Cibrian and recommended that he not testify, but because "there are certain pressures from the County Jail" Cibrian felt he should testify. The court immediately asked Cibrian if the "pressures" referred to were from the police department or from the prisoners. Postel replied that in these cases "when a man is subpoenaed as a

defense witness, the people in the jail feel he should go to the aid, regardless of what may happen to him, and so on, and it is no individual.'' The court then asked Cibrian if he felt that he was under any pressure. Cibrian replied, ''Well, I wouldn't want to say it now, sir.'' The court then told Cibrian that he had to make up his own mind, and that if any question were asked of him which his attorney felt was harmful the attorney would object and protect his interests. Cibrian then testified that he had not had the conversation testified to by the officers. On cross-examination Cibrian's counsel objected successfully to any questions beyond the scope of this direct examination, and several times successfully objected on the ground that the answer might incriminate the witness.

Then, when the defense called Cibrian as a witness, Cibrian was represented by the deputy who had been assigned to defend him—Mr. McNamara. He asked for a conference. The attorney then told the court that Cibrian was ''highly emotional, nervous, upset, uncertain''; that he was ''very apprehensive about certain things'' and in ''fear of eventual bodily harm'' if he did not testify. McNamara stated that he had advised Cibrian not to testify, and also stated that, in his opinion, Cibrian was in no condition to testify. Under these circumstances the trial court made a sincere effort to make Cibrian understand that he had a legal right to refuse to testify on the ground of possible self-incrimination. After Cibrian had stated that nevertheless he wished to testify, the court again told him of his constitutional rights. During this discussion the attorney for appellant stated that he, the attorney, ''would like to be satisfied that if Mr. Cibrian testifies, he will tell the truth.'' After Cibrian had testified that he was not connected with the offense involved, a consultation was had in chambers and appellant's counsel withdrew the request to have Cibrian take the stand. Both Cibrian and the attorney for appellant expressed satisfaction over the way the matter had been handled. Thus, the record demonstrates to a certainty that no attempt was made by the trial judge to intimidate Cibrian. The trial judge rightfully and properly advised Cibrian of his rights. Everything the trial judge did was called for by the circumstances. Far from being subject to criticism, the trial judge is to be commended for the careful and judicial manner in which he handled the matter.

The next contention of appellant is that the prosecuting attorney was guilty of misconduct in improperly ques-

tioning him about a juvenile conviction. The record shows that on cross-examination appellant testified that he had never been convicted of a felony. The prosecutor then asked if it was not a fact that he had been convicted of burglary with a deadly weapon in Redwood City. The defendant then stated that when he was 16 he had been convicted as an accomplice and placed on probation, and that this occurred in October of 1950. On redirect it developed that appellant had been tried for this offense in the juvenile court. Counsel for appellant moved to strike the evidence and also for a mistrial. The court granted the motion to strike, carefully instructed the jury to disregard the reference to the conviction, and admonished the jury not to consider this evidence in any manner in their deliberations. The court then denied the motion for a mistrial. Then, while still under redirect by his own counsel, appellant reopened the matter by testifying that he was 17 years old in 1950. On recross the prosecuting attorney asked appellant the date of his birth and was told that it was February 3, 1932. The prosecutor then stated that appellant must have been 18 in October of 1950 when the juvenile matter arose. Counsel for appellant objected. The court pointed out that, while defense counsel had reopened the subject, it preferred that there be no further discussion of the matter. The court then repeated its former admonition to the jury, telling them to strike the matter from their minds.

There was no prejudicial misconduct. ■ A defendant who takes the stand, just as any other witness, may be impeached by proof of a prior felony conviction. (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752] ; *People* v. *David*, 12 Cal. 2d 639 [86 P.2d 811] ; *People* v. *Tabb*, 137 Cal.App.2d 167 [289 P.2d 858].) ■ Thus, the first series of questions asked by the prosecution were proper in the absence of knowledge that the conviction was in the juvenile court. Once it appeared that the conviction was had in a juvenile court the trial court immediately struck the evidence and properly admonished the jury to disregard the reference to the conviction. The question of appellant's age in October of 1950 was then opened up by appellant's counsel. The answer given by appellant to this question was not truthful. The prosecutor brought this out on recross. The inquiry was then cut off by the trial court and the jury again admonished.

The prosecutor probably should have known that the conviction was in the juvenile court when he first asked about the

conviction. If he had such knowledge, he should not have asked the question. But this impropriety could not possibly have been prejudicial in view of the strong evidence of guilt.

The order and judgment appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 16, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 17, 1958.