STATE of Missouri, Respondent,

v.

Richard Lee POLLARD, Appellant.

No. 52836.

Supreme Court of Missouri, Division No. 2.

Feb. 12, 1968.

Rehearing Denied March 11, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Thomas J. O'Brien, Sp. Asst. Atty. Gen., Kansas· City, for respondent.

Dewey S. Godfrey, Jr., St. Louis, for appellant.

BARRETT, Commissioner.

The appellant, Richard Lee Pollard, with a prior felony conviction was, in the language of the statute, RSMo 1959, § 560.120, V.A.M.S., charged with robbery with a dangerous and deadly weapon, specifically that on January 7, 1966, with a pistol "did rob, steal, take and carry away one hundred dollars, lawful money of the United States; the property of Peoples 905 Liquor, Incorporated, a corporation, in the care and custody of Harry Grossman by then and there putting the said Harry Grossman in fear of an immediate injury to his person, and then and there did feloniously and by force and violence to the person of the said Harry Grossman, rob, steal, take and carry away the said money * * *." A jury found Pollard guilty of the charge and the court fixed his punishment at 25 years' imprisonment, RSMo 1959, § 560.135, V.A.M.S.

In brief the circumstances were that at 11 o'clock in the morning of January 7, 1966, Tim Baskin, the porter at the 905 liquor store, 600 North Vandeventer Avenue, and a beer truck driver were unloading and stacking cases of beer in a rear room. Harry Grossman, the manager, was standing near the cash register and "at different times" there were "two fellows" waiting to see the porter—ostensibly to borrow small sums of money. Grossman turned around when "a customer came in" and asked for a bottle of wine. When he turned around the other two men had moved, one just inside the swinging door to the rear, the second to the left of the ice vendor and the wine customer, pointing a pistol, said "This is a stick up." Grossman said, "Are you kidding? * * * I'm not afraid of that thing." The gunman "pulled back the chamber and he shot me once," the bullet went through his right leg and out the left—because of the wound it became necessary to amputate his right leg. Grossman identified the appellant as the man who shot him, took $1200.00 to $1300.00 from a cigar box kept in a cooler, $50.00 to $60.00 from the cash register and the bottle of wine. The three robbers, all armed, ran out the door and then separated, two ran toward an alley north and the third one, the appellant, ran across the street west. All three robbers were Negroes and Grossman identified the appellant as the man who pointed the gun and shot him. When pressed on cross-examination as to his ability to identify and "differentiate" between defendant and "another Negro of similar color and size" Grossman said, "I looked right in the man's eyes. * * * All I can say is I can remember that face in front of my eyes as long as I live." These briefly narrated circumstances, needless to say, support the charge and the jury's verdict. State v. Key, Mo., 411 S.W.2d 100; State v. Shannon, Mo., 413 S.W.2d 198.

Upon this appeal a single assignment of error was briefed and argued by

most competent court-appointed counsel. It is that the court erred in "admitting all evidence of Defendant's pre-trial identification by witnesses Grossman, Armour and Moore because said identification in the 'lineup' was unnecessarily suggestive and conducive to irreparable mistaken identification of the Defendant." Although the trial and confrontations here were prior to June 12, 1967 (Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199) it is sought by this assignment to bring the cause within United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. In the motion for a new trial the specifications of error are that the court erred "in allowing evidence of the show up to be introduced in evidence for the reasons that the show up was so unfairly set up that there was no doubt that defendant would be identified" and, second, that the court erred in allowing Mr. Grossman "to testify as to his identification for the reason that only one person (Pollard) was brought before him for him to identify, thus said action denied to defendant the equal protection of the laws." Even if the principles announced in the Wade and Gilbert cases may be said to be applicable, the assignments of error in this case are not so supported by the record as to bring the case within their condemnation for two of the reasons set forth in the Wade opinion "the in-court identifications had (in part) an independent source * * * (and) in any event (in this particular case) the introduction of the evidence was harmless error." United States v. Wade, supra; State v. Blevins, Mo., 421 S.W.2d 263.

As indicated, Grossman made an in-court identification of Pollard as the person who shot him and took the money and although he had never seen Pollard prior to the robbery he was very positive he would "remember that face in front of my eyes as long as I live." Grossman gave a description of the robber who held him up to the police and in this he was not accurate as to his height or weight. The circumstances do not appear but Grossman identified photographs of Pollard. On the fourth day after the robbery and his amputation Pollard was brought to the hospital alone and Grossman identified him as his assailant. It is not necessary to consider and weigh Grossman's identification alone because to do so is to consider it out of the context of the trial and it does not stand alone. Oscar Armour operated the Big Q Inn, "a 3.2 place" at 611 Vandeventer, diagonally across the street from the 905 liquor store. About 11 o'clock on January 7, 1966, he was standing "in the window" of his place looking toward the street and "there's a lot of commotion out there and, you know, and people." And so he walked out on the sidewalk and was talking to Frank Moore when "I seen two guys running, going up the alley to your right, and the other one—. Another one came across the street by my place. * * * He was coming off the lot (905 lot) when I first seen him. * * * I watched him till he passed me * * * about eight or ten feet" and went on "up the little driveway." Armour then made his in-court identification of Pollard as the man who ran past him because he recognized him at that time. Subsequently Armour identified Pollard in the police station but as to his identification as Pollard ran from the liquor store there were these questions and answers:

"Q. And had you ever seen this man before?

"A. I had seen him a couple of times.

"Q. I mean prior to January 7, 1966, had you ever seen him?

"A. Oh, yes. I seen him.

"Q. And how many times? You said a couple of times.

"A. Well, you know, quite a few times.

"Q. All right. And where, if you remember, where did you see him?

"A. I have seen him around in the vicinity. I have seen him up on Newstead and Delmar."

\*   \*   \*   \*   \*   \*

"Q. Now, but you have seen him around the neighborhood?

"A. I have seen him before, yes.

"Q. So you had seen this man on several occasions before January 7, 1966, is that right?

"A. Oh, yes, sir."

On cross-examination this further information was elicited:

"Q.—Now, when the person was going towards Washington, he had the back of his head turned toward you, did he not?

"A.   Yes, I imagine he did.

"Q.   You couldn't identify him from the back of his head, could you?

"A. He came right by me. I was standing right there. He came right across the street by me."

\*   \*   \*   \*   \*   \*

"Q. You had seen him on numerous occasions, you said, three or four occasions.

"A. Yes, I have seen him."

\*   \*   \*   \*   \*   \*

"Q. Well, you said you had seen him before, and I'm asking you then why could you not give the police on the date the incident happened a better description than what you're telling us you gave the police?

"A. Oh, well, I give them the description as far as I know of the fellow, but as far as me knowing his name, I never know the man's name.

"Q. I didn't ask you about his name, but you said he was five-six and a dark brown-skinned individual. That's all you could tell the police, is that right?

"A. That's all I could tell, and he asked me would I know him again, and I told him yes."

Thus, while Armour did not give the police an accurate description of Pollard as to height and weight, it is obvious from his testimony that his "identification" was not identification in its conventional sense of "a matter of opinion or belief" (42 C.J.S. pp. 374–375), he identified Pollard as he ran from the scene of the robbery, at police station and in court because of his "acquaintance" that is "In its concrete sense, a person or persons with whom one is acquainted" or because he personally knew him. 1 C.J.S. p. 915. The only strictly "lineup" identification was that made by Moore who was standing in front of Armour's tavern, and it turned out that he had some knowledge if not acquaintance with Pollard:

"Q. Now, had you ever seen this man before? (that is, as he ran across the street with "some object in his hand").

"A. I remember seeing him one or two times in the neighborhood but not—

"Q. All right. Do you know where you saw him?

"A. How's that?

"Q. Do you know where you saw him prior to January 7?

"A. Oh, just like you pass someone in the streets. I never had anything in common with him or talk to him or nothing like that."

Their testimony has been quoted rather extensively because the language in the idiom of the witnesses illustrates more clearly than a narrative of what they said that Armour's identification in court or elsewhere, as well as Moore's if not Grossman's, was not based on, as the question was put in the first sentence of United States v. Wade, "a post-indictment lineup con-

ducted for identification purposes." On the contrary, Armour's, and perhaps Moore's, "identification" of Pollard was based on prior personal acquaintance—or, in a sense, on personal knowledge. In these circumstances there could be no manifest prejudicial error in the admission of any of the unobjected-to evidence concerning the appellant's identity as one of the three robbers who with guns held up Grossman and robbed Peoples 905 Liquor. Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.