**STATE of Missouri, Respondent,**

v.

**James Cornelius DeLUCA, Appellant.**

**No. 54657.**

Supreme Court of Missouri, Division No. 1.

Jan. 12, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Lakenan Barnes, Barnes & Barnes, Mexico, for appellant.

HIGGINS, Commissioner.

James Cornelius DeLuca, with a prior felony conviction, was charged with robbery, first degree. A jury convicted him of the charge and the court fixed his punishment at 18-years' imprisonment. Sections 556.280, 560.120, and 560.135, V.A.M.S.

■ On February 21, 1968, at about 5:20 or 5:25 p. m., a lone man wearing a topcoat entered the Universal C. I. T. Finance Company office in Mexico (Audrain County), Missouri. The man had his hands in his pockets and the right-hand pocket was pushed or protruded forward as though it contained a gun. James Ralph Hayden, office manager, and Donald F. Chapman, his assistant, were closing the office for the day. The intruder ordered the two employees to show where the business cash was kept and then ordered them to accompany him to that place in the rear of the office. He took the money, some $950 in currency, and put it in his left-hand coat pocket, after which he ordered the employees into a storeroom and directed them to remain quiet for five minutes or he would kill them. When the robber left, the employees waited about three minutes, then called and gave Mexico police a description of the robber. Appellant was subsequently arrested and was identified at trial, February 24, 1969, by the two employees as the man who robbed them by placing them in fear of injury to their persons on February 21, 1968. These circumstances are sufficient to support the charge and the jury's verdict. State v. Pollard, Mo., 425 S.W.2d 106, 107 [1]; State v. Keeney, Mo., 425 S.W.2d 85, 87–89 [1, 2].

The dispositive question on this appeal is whether the court erred in permitting in-court identification of appellant by the victims of the robbery, Mr. Hayden and Mr. Chapman. Appellant contends the in-court identifications were error because they resulted from a lineup which violated his constitutional rights to have counsel at the lineup as declared in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. Since the lineup postdated these cases, respondent concedes their application to appellant's lineup but contends that lack of counsel at a lineup under those cases does not require reversal if later in-court identifications had a source independent of the lineup confrontation.

United States v. Wade, supra, 388 U.S. l. c. 240–241, 87 S.Ct. l. c. 1939, recognized that when a lineup has been conducted without counsel, the government should have an "opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification"; and that in resolving the issue these factors should be considered: "* * * prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup

of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

United States v. Wade, supra, reviewed a district court conviction and vacated the conviction pending hearing in district court to determine whether the in-court identifications resulted from the lineup or whether they had an independent source, and whether, in any event, admission of the evidence of identification was harmless error. This procedure was adopted because, on the record before it, the supreme court could not "make the determination whether the in-court identifications had an independent origin. This was not an issue at trial, although there is some evidence relevant to a determination." 388 U.S. 1. c. 242, 87 S.Ct. 1. c. 1940.

It is not necessary to remand this case for hearing required by United States v. Wade, supra, because such hearing was accorded, the trial court ruled in favor of admitting the in-court identifications, and the evidence has been preserved. Under those circumstances, the evidence is reviewed to determine wehther it shows in-court identifications stemming from independent source, or whether it resulted from a lineup tainted by absence of counsel. State v. Mentor, Mo., 433 S.W.2d 816, 818.

On February 17, 1969, defendant filed motion to suppress "any and all testimony of James R. Hayden, Don F. Chapman and Russell Wilkes as to any identification of the defendant * * *" on the ground he was compelled to appear in a lineup without assistance of counsel. Pretrial hearing on this motion was held February 18, 1969, where it appeared that defendant did not have assistance of counsel at his lineup, but the court overruled the motion because "the issue (of in-court identification) will not arise until such time as an 'in court' identification is attempted to be made."

After opening statement by the state at trial February 24, 1969, defendant moved for hearing outside the presence of the jury to determine whether any courtroom identification was the result of illegal lineup. Evidence was again taken and the court subsequently permitted James Ralph Hayden and Donald F. Chapman to make in-court identifications of defendant as their robber based on sources independent of the lineup.

The evidence at these hearings showed that a lineup in which defendant was present with four or five others was conducted March 27, 1968, in Columbia, Missouri, at the request of the Sheriff of Audrain County. Defendant did not have counsel. All the men in the lineup were dressed alike and were of approximately the same age, and no suggestion of the suspect was made. Neither Mr. Hayden nor Mr. Chapman had any difficulty identifying the defendant as their robber. Typical of the testimony given by both Mr. Hayden and Mr. Chapman are these excerpts from their testimony.

James Ralph Hayden, manager of the Universal C.I.T. Credit Corporation office testified:

"Q I want to ask you, Mr. Hayden, what description did you give to the police authorities as to the appearance of the person who robbed you? A I described a man who was approximately 5, 7, weighing approximately 160 to 165 pounds, had on a dark topcoat, a dark business man's hat, wearing sunglasses, said that he was, appeared to be possibly of Italian descent. I think I gave his age, estimated his age at somewhere around 25 years old. * * *

"Q What color topcoat was he wearing? A It was dark in color; it could

have been a dark brown or a black—I don't know definitely. Q He had sunglasses on? A Yes, sir. * * * Q Was the collar of the coat up. A No, sir. Q Are you sure of that? A Positive. * *.

"Q Mr. Hayden, did you get a good opportunity to see the man that came in there on the 21st of February, 1968, there in the C.I.T. Credit Corporation? A Yes, sir, I did. Q Would you just briefly tell the Judge where this man was when you first saw him? A When I first saw him, he was approaching the front door of our office * * *. Q Now, how close were you at that time to the man who came in to rob you? A Approximately 2 feet. * *

"Q And could you tell the Court why you were observing him? A Well, this was the first time I was ever involved in anything of this nature, but working for a Finance Company, the National Consumer Finance sends out pamphlets with reference to robberies and things we should do whenever such as this occurs and it just went through my mind to look at him and try to remember all that I possibly could so I could identify him.

"Q And then about how long were you there where the money box was? A I would say approximately 3 minutes, maybe. * * * Q And how close were you to him at that time? A Again, he stayed about 2 or 3 feet from us at all times."

Don F. Chapman (then assistant manager of Universal C. I. T.), testified:

"Q Will you describe that person (who robbed your place of business)? A Oh, he was about 5 foot 6, 5 foot 7, weighed about 160, 165 pounds, had an overcoat on, tie, white shirt, hat, sunglasses. Q What type of coat was it? Was it long or short — A It was a regular overcoat. * * * Q Would you class that as a dark or a light color? A Dark. Q What kind of hat did he have on? A Well, I don't know exactly what you call it, just a regular hat with a brim. The brim was turned down a little bit. Q Did the brim go down in front? A Yes; a little bit. Q You say he had on sunglasses? A Yes, sir. Q Were they the wrap-around type or were they simply two lenses with colored glass in them? A I believe they were similar to the glass frames that you wear.

"Q Did you notice anything else about this man? A Yes. Q What? A I looked for the type of descent he was from, what he was so far as nationality, his facial features. Q What did you think they were? A Of Italian or Jewish, I don't know just exactly. Q What do you mean when you say 'Italian'? A Oh, more so kind of dark complected. * * *

"Q Now, when you were there where the money was, did you have an opportunity at that time to observe the robber? A Yes, sir. Q Did you look at his head? A I looked at his face. Q Did you look at his size? A We determined—he had a coat, he did have a topcoat on. Q Did you look at him to see how tall he was? A Yes, sir. Q How big he was? Did you look at him to see what his coloring was? A Yes, sir. Q Was there any particular reason why you were paying close attention at this time? * * * A Being in the finance business, we belong to the National Consumer Finance and they send out pamphlets at all times in regards to what to do in case of a robbery and our Company puts out information too, when someone robs you, don't resist, but do look at him and try to get the height, get the size, what he looks like, so you can identify them at a later time. Q And did you get a good look at the man? A Yes, sir. Q And did you form an opinion as to what he looked like at that time? A Yes, sir. * * * Q Did you have any difficulty (at the lineup) picking out the man who you claim robbed you? A No, sir. Q Do you see that man here today? A Yes, sir."

The in-court identification by both Mr. Hayden and Mr. Chapman proceeded along the same line, and they were cross-examined concerning their failure to note defendant's chipped front tooth and certain facial scars. Mr. Chapman stated on rebuttal that the defendant did not show his teeth when he talked. These witnesses were also cross-examined concerning variation in defendant's skin color, and there was rebuttal to show defendant to have been darker at the time of the robbery and lineup than at the trial.

■ This evidence, considered with the criteria from United States v. Wade, supra, shows that the in-court identifications of defendant by Mr. Hayden and Mr. Chapman had a source independent of the lineup, and the admission of their testimony identifying defendant as their robber was thus not error. State v. Mentor, supra, 433 S.W.2d l. c. 820, is directly in point, and for a post-Wade in-court identification involving variation in skin color and whether a robber was "either Mexican or Indian," see State v. Tehee, Mo., 445 S.W.2d 285, 286 [1]. See also State v. Keeney, supra, 425 S.W.2d l. c. 90 [7], and State v. Pollard, supra, 425 S.W.2d l. c. 109–110.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and TITUS, Sp. J., concur.

STORCKMAN, J., not sitting.