**STATE of Missouri, Respondent,**

v.

**David Harrison RICHARDS, Appellant.**

**No. 55721.**

Supreme Court of Missouri,
Division No. 1.

April 12, 1971.

Motion for Rehearing or to Transfer to Court
En Banc Denied May 10, 1971.

34

 

Upon his separate trial, defendant David Harrison Richards was convicted by a jury, his punishment was assessed at life imprisonment, and judgment and sentence were rendered accordingly. §§ 559.010, 559.030, V.A.M.S.

Appellant tacitly concedes the sufficiency of evidence to support the verdict. At approximately 10:30 p. m., April 30, 1969, Izetta Hamilton, Paul Body, and John (Babe) Johnson, together with others, were customers of bartender Ignatius DiManuele in Pete DiManuele's Bar at 3044 Easton, St. Louis, Missouri. Three young Negro males entered the bar, went to the rest room, and left. Around 11 p. m., the same three young men again entered the tavern. One went to the bar, a second stood by the entrance, and the third went toward the back of the bar. All three drew pistols, informed all present to keep still and that this was a holdup. One robber jumped over the bar and removed money from the cash register; another took money from Johnson and Body; and, although her purse was examined by one of the robbers, nothing was taken from Izetta Hamilton. A gun also was taken from the bar. One of the men struck Ignatius DiManuele and pushed him from behind the bar. He was struck a second time, causing him to fall to his knees. As the three robbers left, one turned and shot Mr. DiManuele twice, one shot going through his foot, the other into his left lower chest. Defendant was identified as the robber who fired the shots. Ignatius DiManuele was taken to the hospital where he died at 12:30 a. m., May 1, 1969, of the gunshot wound in his chest.

On May 3, 1969, David Harrison Richards was arrested in the company of Allen Edward Smith, and they were placed in a lineup with four other young Negroes, including Winford LaVern Stokes. The lineup was viewed separately by Hamilton, Body, and Johnson, and defendant, Smith, and Stokes were identified by one or more of the witnesses as the three robbers. Stokes had been arrested while seated un-

———◆———

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

David F. Ulmer, W. David Wells, St. Louis, for appellant.

HIGGINS, Commissioner.

David Harrison Richards, Allen Edward Smith, and Winford LaVern Stokes were indicted for murder, first degree, of Ignatius DiManuele on April 30–May 1, 1969.

der the steering wheel of an automobile in which one K. C. Robberson was a passenger. Just prior to the arrest, the gun taken from the bar, together with loaded clip, was thrown from the right-hand side of the automobile.

■ Prior to trial, defendant moved unsuccessfully for inspection and copies of grand jury testimony in connection with his indictment; and the first assignment of error goes to the denial of his motion. Appellant argues that if grand jury minutes are unavailable to a defendant prosecuted by indictment, he is at a disadvantage when compared to a defendant prosecuted by information who can attend his preliminary hearing and have transcribed testimony there adduced; that a transcript of grand jury testimony would enable him to become aware of any discrepancies between grand jury testimony, deposition testimony, and trial testimony of a witness; and that Criminal Rule 24.24, V.A.M.R. should not prevent him as a matter of right from access to pertinent portions of grand jury testimony to aid him in preparation and for purposes of discovery.

The same contentions and supporting arguments were advanced and rejected as late as November, 1970, in State v. McCaine, Mo., 460 S.W.2d 618, 620–621[1–6]; and no reason has been made to appear for the court to change from the position there discussed. Appellant cites one case not there considered, Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, but it deals with standards applicable under Federal Rules of Criminal Procedure and does not suggest that Missouri's Rule 24.24, supra, is in any way unconstitutional. See State v. Tackett, 78 N.M. 450, 432 P.2d 415, 417; Anno: Accused's Right to Inspection of Minutes of State Grand Jury, 20 A.L.R.3d 7, 23.

■ Citing Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, appellant complains next that the court de-nied him a fair and impartial jury trial by striking for cause prospective jurors who could not consider imposition of the death penalty. The contention is without merit because Witherspoon, v. Illinois, supra, has no application when the jury does not assess the death penalty. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; State v. Pollard, Mo., 447 S.W.2d 249, 251[2–5]; State v. Franklin, Mo., 459 S.W.2d 314; State v. Quinn, Mo., 461 S.W.2d 812, 815[1].

■ State's Exhibits 7, 8, and 9 were the gun, clip, and shells taken from DiManuele's Bar during the robbery and shooting, found when thrown from a car occupied by Winford LaVern Stokes. Appellant charges that their admission into evidence was error, asserting they were irrelevant, immaterial, prejudicial, and not connected to defendant. It is not disputed that the gun, in loaded condition, was taken during the robbery and shooting, and was thus admissible evidence. State v. Gerberding, Mo., 272 S.W.2d 230. Such is the case even if the item be not taken directly from defendant if it be taken from the possession of his coconspirator, State v. Anderson, Mo., 384 S.W.2d 591; and Winford LaVern Stokes was identified as one of the robbers, State v. Price, Mo., 362 S.W.2d 608.

■ Similarly, appellant complains of admission into evidence of State's Exhibits 11, 12, and 13, an apron, shirt, and undershirt "allegedly" worn by Ignatius DiManuele at the time of his death, asserting they were not sufficiently identified and were not utilized for the purpose for which they were offered. The apron, shirt, and undershirt were recovered at the hospital from deceased's body, and they showed blood-stained bullet holes. As such, they bore on the nature and fact of a bullet wound, and were thus material. State v. Evans, Mo., 406 S.W.2d 612, 617.

Next is a complaint that the court severely limited and restricted the nature and

scope of counsel's opening statement. Examination of the opening statement on behalf of the defendant shows that counsel emphasized to the jury that statements by counsel were not to be considered evidence; that evidence comes only from witnesses; that the indictment is not evidence; that defendant does not have to prove a thing but may rely on the state's failure to prove a case; that the burden of proof is on the state; that defendant is clothed with a presumption of innocence; that defendant wants to explain why he is not guilty and could not possibly have committed the crime charged. There were numerous objections by the prosecuting attorney to counsel's arguing the case, some of which were sustained as going to argument and some of which were overruled to permit mention of the matters stated.

 Counsel should be permitted to inform the jury in a general way of the nature of the action before it, Hays v. Missouri Pac. R. Co., Mo., ·304 S.W.2d 800; but control of arguments is a matter within the discretion of the trial court, State v. Arrington, Mo., 375 S.W.2d 186. Here, the record shows that counsel made no statement of the facts as he thought they might develop, and he made no offer with respect to fact recital he wished to make. He did state several important considerations for guidance of the jury, State v. Murphy, Mo., 111 S.W.2d 132, and there is no demonstration of prejudice as a result of any limitation which may have occurred. In such circumstance, there is no reversible error. State v. Moore, Mo., 303 S.W.2d 60.

 Appellant charges the court erred in failing to declare a mistrial when the prosecuting attorney on two occasions mentioned the "Arbeiter decision." In answer, suffice to say there was no objection upon either occasion, let alone a request for mistrial. Accordingly, the point has not been preserved for review. State v. Williams, Mo., 423 S.W.2d 736.

 Another of defendant's unsuccessful pretrial motions was one to disclose favorable evidence including tangible and intangible evidence going to guilt or punishment, impeachment of state's evidence, exoneration of defendant, or credibility of state's witnesses. The motion was sustained to require disclosure of any material evidence known to the state to be favorable to the defendant on the question of guilt or punishment and was otherwise overruled. The complaint is that the court failed to direct the state to reveal evidence which would impeach or discredit state's evidence.

The only demonstration with respect to the existence of any such evidence is the statement of the prosecuting attorney in response to the court's inquiry that he knew of no evidence favorable to the defendant in any of the respects mentioned by the defense motion. There was no showing of suppression of existing evidence to bring into play the rulings of Brady v. Maryland, 373 U.S. 83, and Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737. Such circumstances fail to demonstrate error. State v. Swiggart, Mo., 458 S.W.2d 251.

Appellant contends the court erred with respect to his pretrial motion to suppress identification testimony and in permitting in-court identifications by witnesses Body, Hamilton, and Johnson.

 Appellant's pretrial motion was "based upon" United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. He concedes that the lineup to which it was directed was a preindictment lineup and that, in such case, United States v. Wade, supra, has no application. State v. Walters, Mo., 457 S.W.2d 817.

 Insofar as this point is a complaint of a lack of independent origin of the witnesses' in-court identifications, suffice to say that the record shows each of

the identifying witnesses to have been confronted by defendant and his companions in the course of the robbery and shooting, and that none of them had a suspect suggested to them prior to their viewing the lineup. State v. Clemmons, Mo., 460 S.W.2d 541; State v. DeLuca, Mo., 448 S.W.2d 869, 873[2].

■ In a second attack on the voir dire examination of jurors, appellant contends he was erroneously restricted with respect to individual questions. The record shows that the court inquired generally of all veniremen; that the state propounded general questions to all veniremen, and was permitted to question individually all who responded to general questions; that defendant propounded general questions to all veniremen and was permitted to make specific inquiries of all who responded to general questions; and that defendant asked individual questions of some fifty jurors. Examination of jurors is another trial facet controlled by the discretion of the trial judge, and the foregoing circumstances are not demonstrative of an abuse of discretion. State v. Nelson, Mo., 459 S.W.2d 327.

Appellant complains that the court erred in having him placed in handcuffs during trial.

■ The matter of restraints upon an accused is also within the judge's discretion, and the court may order restraints when necessary to maintain order and security in the courtroom. State v. McGinnis, Mo., 441 S.W.2d 715; State v. Cox, Mo., 352 S.W.2d 665; Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. Prior to trial, counsel requested the court to permit defendant in the courtroom without restraints, and the court stated it would not order defendant handcuffed unless he created a disturbance. Following the testimony of the first state's witness, Johnson, a recess was called. Following the recess, testimony was taken from two courtroom deputies that defendant accused witness Johnson of telling a "dam lie on me" and swung his coat at the witness, causing the witness to back away; and that persons in sympathy with defendant in the courtroom were "slamming" their hands on the benches following Johnson's testimony. Subsequent interrogation of defendant by the court showed that he was not under control of his lawyer, and that he was critical of the trial atmosphere. In such circumstances, the court was not guilty of an abuse of discretion. Illinois v. Allen, supra.

■ Next is a charge that the state was permitted to persuade Allen Edward Smith not to testify on behalf of defendant. The argument is that state's counsel threatened Smith with perjury if he testified favorably to defendant. Allen Edward Smith was jointly indicted with defendant and, upon his own severance, pleaded guilty as an accessory. Contrary to appellant's assertion, it appears that the court had Smith produced, but asked the public defender's office to advise him of his rights prior to permitting him to testify. Following such consultation, the witness declined to testify. Such record shows no improper influence by the state or the court. People v. Cooper, 268 Cal. App.2d 34, 73 Cal.Rptr. 608; People v. Witt, 159 Cal.App.2d 492, 324 P.2d 79; 98 C.J.S. Witnesses § 449.

Finally, appellant claims the court erred in allowing the state in closing argument to mention that addresses of state's witnesses were not elicited for obvious reasons; to ask the jury to consider what age group commits the most crime in St. Louis; to waive unadmitted photographs before the jury. There were no objections to the reference to witnesses' addresses or to the photographs; consequently, no issue has been preserved for review. State v. Porter, Mo., 458 S.W.2d 256.

■ The reference to young men as an age group which committed much of the crime in St. Louis was in rebuttal to appel-

lant's closing argument referring to defendant as an innocent "boy." As such, it was retaliatory argument within the court's discretion. State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582; State v. Cusumano, Mo., 372 S.W.2d 860.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HOLMAN and BARDGETT, JJ., concur.

SEILER, P. J., concurs in result in separate opinion filed.

SEILER, Presiding Judge (concurring in result).

Although I concur in the result reached in the main opinion under the facts of this case, I am unable to agree that the Wade-Gilbert rules (United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178) are limited in their application to lineups occurring after indictment, assuming the point is to be resolved at all in view of counsel's concession. In my view, the Wade-Gilbert rules are not so limited, for the reasons set forth in People v. Fowler, 1 Cal.3d 335, 82 Cal.Rptr. 363, 461 P.2d 643.

Also, I am of the opinion that we should not continue to deny defendant any discovery in criminal cases (the practical effect of our decisions), while continuing to permit the state to make discovery by way of the grand jury proceedings as is regularly done in some areas, and leaving it to the prosecutor to decide whether there is any favorable evidence known to the state which should be disclosed to defendant. Reasonable discovery permitted a defend-

ant may very well speed up the administration of justice in Missouri. It is likely to result in speedier trials in disputed cases, and in more pleas or dismissals in the cases where there really is no genuine dispute.