**STATE of Missouri, Respondent,**

**v.**

**Robert Lynn FRANKLIN, Appellant.**

**No. 53881.**

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Alfred I. Harris, St. Louis, for appellant.

HIGGINS, Commissioner.

Robert Lynn Franklin, indicted for carnally and unlawfully knowing a female

child under the age of sixteen years, was convicted by a jury which assessed his punishment at fifteen years' imprisonment. Sentence and judgment were rendered accordingly. § 559.260, V.A.M.S.

Appellant charges error in submitting this case to the jury contending (IV) there was not sufficient evidence of penetration.

 A brief statement will demonstrate sufficient evidence from which a jury could find the fact of penetration, as well as to sustain the jury's verdict in all respects.

The prosecutrix, Mae Lee Mack, born August 3, 1953, was fourteen years old at trial. On August 5, 1967, she resided with her mother, sister, and half brother at 2644 Rutger, St. Louis, Missouri. At 1:00 a. m. on the morning of August 5, 1967, Mae Lee, her sister Annie, her half brother, Thomas Johnson, and a friend, Laverne Jones, were sitting in front of the 2644 Rutger residence. It was too hot to sleep. A boy named Skeeter, later identified as Ronald Jones, came by, and Annie, who appeared to know him, left and went upstairs. Mae Lee then went upstairs where her mother, Louise Johnson, and her mother's friend, Casey Holmes, were visiting. About fifteen minutes later her brother, Thomas, came running in, "locked the door and said somebody was coming up the back steps." The last arrivals stated they were "police" and asked for "Casey," whom they said they wanted for "jumping on our brother." Then, "First they kicked the door, it flew open and mother and Casey pushed it back and locked it, and they kicked it again and Casey jumped out the window." Mae Lee and her sister hid in the closet but "they," Larry Starks, Skeeter, and Robert Franklin, found her and ordered her out of the closet. Larry Starks was holding a sawed-off shotgun and "they took my sister in the kitchen." The defendant and Skeeter stayed in the middle room with her and the defendant held the shotgun. "Larry came in the kitchen and got me. * * * He took my slip from my waist." Skeeter was "on top" of her sister. "Larry Starks made me take down my clothes from the waist * * *. Then he got on top of me." After he completed his act of intercourse, "He went in the back room and took the gun and Skeet got on me. * * * Then Ronald (defendant) got on."

"Q Did he have an act of intercourse with you? A Yes, Sir. Q Did he put his penis into you? A Yes, Sir."

During all this time she was crying and was threatened by Robert Lynn Franklin, "If I don't act right he was going to kill me."

After all three men had intercourse with both girls, the men fled and police arrived. The police took Mae Lee to the City Hospital for examination and Frederick Louis Dean, a microbiologist stated her "smear test" showed presence of male spermatozoa.

In all these respects Mae Lee was corroborated by her sister Annie, and in part by her mother and brother. In addition, a billfold was found by the police upon their arrival and it contained the motor vehicle operator's license and Selective Service identification of "Robert Lynn Franklin." Also, the clothes said to have been worn by the defendant at the time of the rapes were similar to those in which defendant dressed when arrested at his home around 7:00 a. m. the same day.

The defense was alibi.

 Appellant contends (IV) that the court erred in permitting the witness to "make legal conclusion of the word 'rape.'" Appellant does not indicate any transcript reference where this occurred and the only instance found is where the prosecuting attorney asked whether there was any question the defendant "is the boy, the man that got on top and raped you and told you he was going to kill you if you did not shut up?" There was no objection and, consequently, no allegation of error with

respect to the reference was preserved for review. Criminal Rule 27.20, V.A.M.R.

Similar complaint is made that the court erroneously permitted the prosecuting attorney to correct the prosecutrix's statement, "then Ronald got on" to "and that is this defendant." Again, no objection was made and no allegation of error was preserved for review. Rule 27.20, supra.

It appears from the voir dire examination of the jury panel, conducted in behalf of appellant, that he was a Negro and he wished to determine if any members of the panel were prejudiced against him for that reason. From that, he theorized (I) that the state was permitted to use its peremptory challenges to exclude Negroes from the jury in violation "of the equal protection of the law section of the 14th Amendment of the Constitution of the United States."

The insuperable difficulty with appellant's position is that the transcript does not show which jurors the state may have challenged or what their race may have been, and, more importantly, the record shows no objection to the twelve jurors chosen to try the case. The absence of any proof with respect to such matters precludes any finding of error in the respects charged. State v. Overby, Mo., 432 S.W. 2d 277, 279 [6–8].

Appellant contends (II) that the court erred "in allowing the prosecutor to exclude 16 jurors simply for the reason they had * * * qualms and feelings against the death penalty, when under * * * the Witherspoon case (Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776) such juries do not represent a fair cross section of citizenry, but are hanging juries that belong to a dwindling minority and when juries belong to a minority group they cannot, as a matter of law, render a fair and impartial and constitutional verdict."

This contention was made and denied in State v. Pollard, Mo., 447 S.W.2d 249, 251 [2–5], holding that: (1) where the jury did not assess the death penalty upon a conviction of rape, the ruling of Witherspoon v. Illinois, supra, was not applicable; (2) defendant was not denied due process of law by exclusion from the jury of persons whose opinions preclude them from imposing the death penalty; (3) it is the function of the legislature to designate the range of punishment for a crime; and (4) for the judiciary to demand that potential jurors be considered qualified when they have evidenced a refusal to consider all possible punishments authorized by statutes would be a usurpation by the courts of the legislative function.

Finally, appellant contends (III) that the court erred in not instructing the jury to disregard the prosecutor's inflammatory remark, "this rape did not occur in Belleville or East St. Louis, it occurred in St. Louis, Missouri. God knows, with the crime, the streets here certainly are not safe—." At this point, the record shows:

"MR. HARRIS: Objection.

"THE COURT: Sustained * * *."

Suffice to say that in granting all the relief requested, the court committed no error in not, sua sponte, instructing the jury to disregard.

Judgment affirmed.

HOUSER, and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.