Michael H. MERRILL, Appellant,

v.

STATE of Missouri, Respondent.

No. 38072.

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 12, 1978.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 12, 1979.

Cundiff, Turken & Londoff, Michael A. Turken, St. Charles, for appellant.

John Ashcroft, Atty. Gen., Larry R. Marshall and Philip M. Koppe, Asst. Attys. Gen., Jefferson City, for respondent.

SMITH, Judge.

Defendant appeals from his conviction by the Court for sale of a controlled substance and resultant 5 year sentence. We affirm.

Initially defendant challenges the information as fatally defective because it fails to state into which schedule the controlled substance belongs. The information charged an unlawful sale of a controlled substance "to wit: methylenedioxy-amphetamine." The test of the sufficiency of an information is whether it states the essential elements of the offense charged, adequately notifies defendant of the charge against him and constitutes a bar to further prosecution for the same offense. *State v. Adams*, 546 S.W.2d 550 (Mo.App.1977). Section 195.020 R.S.Mo. Supp. 1971 prohibits the sale of any controlled substance except as authorized in certain other sections of the statute. A "controlled substance" is defined in Sec. 195.010(6) as a substance in Schedules I through V. The schedule to which the drug belongs determines only the punishment. Section 195.017(2)(4)(a) includes in Schedule I "3,4 methylenedioxy amphetamine." The words "methylenedioxy amphetamine" do not appear in any other schedule. Defendant offers no authority, and there appears to be none, for his proposition that since the penalties vary with the schedule to which the drug belongs the schedule must be specified in the information.

This information was sufficient to apprise defendant of the charge against him and bar further prosecution for the same offense.

Defendant also contends that since the prefix "3,4" was omitted from the drug listed in the information "[T]he State failed to establish beyond a reasonable doubt a critical element of the offense charged, the nature of the controlled substance and that possession of said substance was illegal." The State's evidence established that the substance sold by defendant to an undercover sheriff's deputy was "3,4 methylenedioxy amphetamine," a substance listed in Schedule I. Defendant admitted in his testimony that he sold "MDA" "a drug" or "narcotic" to the deputy. The test to be applied is whether the average person reading the list would conclude that the substance sold by defendant was a proscribed amphetamine. *See State v. Crump*, 454 S.W.2d 519 (Mo.1970); *State v. McIntosh*, 500 S.W.2d 45 (Mo.App.1973) [2–4]. Defendant relies upon *State v. Boggs*, 49 S.W.2d 269 (Mo.App.1932) and *State v. Bridges*, 398 S.W.2d 1 (Mo. banc 1966). Both of those cases involve sale or distribution of a substance clearly different in appellation from the substance charged in the information (*Boggs* —corn whiskey vis-a-vis moonshine whiskey; *Bridges* —metamphetamine hydrochloride or amphetamine sulfate vis-a-vis amphetamine hydrochloride). In *Bridges* the cause was reversed but remanded to allow the state to establish that the substance contained a proscribed substance or was the same as a proscribed substance. We find the present case more nearly analogous to *State v. McIntosh*, 500 S.W.2d 45 (Mo.App.1973) in which we held that the description of a drug as soluble secobarbital was insufficient to lead the average person to believe the drug was chemically different than plain secobarbital. Here the substance involved was described

at trial interchangeably by the "3,4" prefix, without the prefix, and by the initials, "M.D.A." No question was raised during the trial that all three appellations were descriptive of the same drug. We find no merit to this point.

 Defendant's next point is that the State failed to introduce sufficient evidence to rebut defendant's evidence of entrapment and therefore failed to establish beyond a reasonable doubt defendant's guilt. Defendant claims he was entitled to judgment of acquittal as the State failed to rebut his evidence of entrapment. It is well established that when defendant presents substantial evidence of entrapment the State has the burden of showing substantial evidence of predisposition to commit the crime. *State v. Weinzerl,* 495 S.W.2d 137 [7–10] (Mo.App.1973); *State v. Devine,* 554 S.W.2d 442 [4, 5] (Mo.App.1977). We do not interpret the usage of the term "rebut" in those cases to mean that the evidence refuting entrapment must be presented after the evidence raising the entrapment issue. Rather, those cases hold that where entrapment is an issue the State bears the burden of establishing that the criminal intent originated with defendant. This burden may be met by sufficient evidence introduced at any point in the trial.

Vincent Garufi, Jr., testified that he was an undercover narcotics agent, had known defendant since 1971 and was formerly his employer. Garufi, defendant, Tom Scholle and Tom Heisler were in a car on February 26, 1975. The other men were smoking marijuana and defendant began talking about how he could purchase narcotics. Garufi expressed interest and gave him $55 for a "taste" of M.D.A. Defendant said he would make contact and get back in touch with Garufi. Defendant sold him the "taste" on March 6, 1975 and said he could make available great quantities of drugs. The drug was analyzed and determined to be 3,4 methylenedioxy amphetamine.

The testimony of defendant and Tom Scholle differs greatly from Garufi's. They recall that Garufi smoked marijuana with them and initiated all conversations about drugs. Garufi first inquired about purchasing drugs in early February, 1975. Defendant refused to become involved. Not long after this defendant and Scholle were arrested for having 5% beer where only 3.2% was permitted. Garufi, who was with another man, came to the police station and told them he had pulled some strings to get them out. They left with him and he told them they owed him a favor. He also mentioned Sam whom they understood to be a member of organized crime who owned restaurants and businesses and was involved in drug dealings. The man with Garufi was understood to be Sam's right hand man. About two weeks later Garufi met them at Scholle's house. He mentioned that Sam had given him $150 to buy drugs but that he was having trouble getting them. He was also having problems supporting his wife and four children and was worried about this and about what might happen to him if he couldn't get the drugs. He offered defendant money to buy drugs but defendant refused, saying he didn't know where to get them. Garufi contacted defendant later, saying he had had to spend $95 of Sam's money for groceries and was afraid Sam would "come down" on him. Defendant refused to take the remaining $55 at that time but did take it a few days later, believing Garufi to be in danger. About a week and a half later Garufi met with defendant at a car lot, saying he feared for his life since he did not have drugs for Sam. Defendant offered to return the money but Garufi refused and defendant agreed to try to find drugs. Defendant bought M.D.A. on the street for $55 and gave it to Garufi. He made no profit on the transaction. He had never sold drugs before although he used them.

In his testimony, Garufi admitted referring to a fictitious friend named Sam who wanted to set him up in drugs but denied saying or implying that Sam was in organized crime or that he was afraid of Sam. He got Scholle and defendant out of trouble when they were arrested but did not tell them Sam got them out. He never offered $150 to buy drugs but only gave defendant

$55. Garufi testified that defendant did not try to return the money and get out of the deal. He later said defendant met him at a car lot and spoke of difficulty in getting the drugs. He said Garufi could wait a few days or could have the money back. Garufi denied smoking marijuana although he has put it to his lips.

Evan Thebeau, Chief of Detectives in St. Charles, testified for the State. He knew Garufi made reference to Sam who is either "Uncle Sam" or Thebeau. Sam was used only in this case and Garufi referred to him as a man with power and connections and involved with organized crime. Garufi was trying to impress these people by getting them out of jail and played a role that he had to pay someone to get them out. He told them Sam pulled strings to get them out but Thebeau was not aware Garufi said they owed him anything. Thebeau has never known Garufi to use drugs.

Defendant contends that the State's evidence was contradictory and inadequate to establish the absence of entrapment. We disagree. Sufficient evidence of entrapment was adduced to place upon the State the burden of establishing predisposition to commit the crime by defendant. It is true that certain inconsistencies existed between the testimony of the State's witnesses Garufi and Thebeau. These inconsistencies, however, did not involve the direct evidence concerning defendant's willingness to participate in the sale of a controlled substance. Thebeau's testimony cast doubt upon the testimony of Garufi, and could properly be considered by the trial court for that purpose. But it did not directly contradict Garufi's testimony of his individual dealing with defendant. Garufi's testimony, if believed was sufficient to establish that the original criminal intent arose in the mind of defendant. Thebeau's contradictions went to the weight of the evidence and was for the trial court to resolve. *See State v. Smart,* 328 S.W.2d 569 (Mo.1959). The State carried its burden of establishing the absence of entrapment.

Defendant next contends that the trial court committed plain error in admitting into evidence the controlled substance because of an absence of sufficient chain of custody. Our review of the evidence convinces us that the chain was sufficiently established. *State v. Rose,* 428 S.W.2d 737 (Mo.1968); *State v. Day,* 506 S.W.2d 497 (Mo.App.1974).

Defendant's last point is that the trial court erred in not granting a continuance on the day of trial in order that the public defender could withdraw in favor of private counsel. We find no abuse of discretion in the trial court's denial of this belated request.

Judgment affirmed.

WEIER, C. J., and SNYDER, P. J., concur.