STATE of Missouri, Respondent,

v.

Johnny MITCHELL, Appellant.

No. 61839.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1981.

Blair Buckley, Jr., Public Defender, Caruthersville, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant was convicted of two counts of capital murder, § 565.001, RSMo 1978. Punishment was fixed at two consecutive terms of life imprisonment without eligibility for parole for fifty years. Appellant contends the trial court erred (1) by authorizing the jury to find appellant guilty of capital murder if it found that defendant "or another" committed the offense; (2) by overruling appellant's objection to the prosecutor's characterization of defense counsel's closing argument as a "smoke screen"; and (3) by allowing voir dire of the jury on the death penalty and excusing for cause a juror who said he would automatically exclude the death penalty from his deliberations. Appellant, in a pro se brief filed out of time, also questions the sufficiency of the information by which he was charged. Jurisdiction is in this Court under Mo.Const. art. V, § 3. We affirm.

On December 20, 1978, at about 7:15 p. m., a customer came to the High Pockets Tobacco Store in Caruthersville, Pemiscot County, Missouri, and discovered the bodies of William Parker, the proprietor, and Pierce Neeley. The coroner, who arrived at about 7:40 p. m., concluded that the two men had been dead about one to one and one-half hours. An autopsy revealed that both victims had sustained several stab wounds and lacerations. The pathologist determined that Parker's death was caused by a stab wound to the chest that punctured the heart. Neeley's death was caused by a laceration of the pulmonary artery. The pathologist testified that both victims' wounds were caused by "some blunt instrument or bottle or can. . . ." Police investigators determined that some change and currency was missing from the cash register. They discovered a broken beer bottle near the bodies, and another bottle beneath Neeley's body.

Earlier that evening, appellant's brother-in-law, Willie Turner, arrived at appellant's home in Steele, Missouri, and shortly thereafter appellant and Turner departed. Appellant, dressed in a brown jacket, carried his pistol with him. Shortly thereafter the two returned, then left again, this time taking two ski masks with them. It is about twelve miles from Steele to Caruthersville.

Appellant returned to Steele between 8:30 and 9:00 p. m. with a considerable amount of change, some of which he shared with the children of the woman (Francis) with whom he was living.[1] He told Francis that he had "pulled a robbery" at a "cafe" in Caruthersville, and that two people had been killed. Appellant told her that Turner had hit one of the victims with Turner's gun. Appellant stated that he had hit one of the men with a beer bottle. Francis noticed that appellant's pistol was "bent".

[1] Before trial, defense counsel filed a motion in limine to prevent testimony by Francis Mitchell on the basis that Francis and Johnny Mitchell were married.

At the hearing on the motion, Francis testified that she and appellant were married on October 19, 1976. Francis also testified that she and Wade Crawford were married in Arkansas in 1967, and that she and Crawford had never been divorced. Wade Crawford also testified that he and Francis were married in 1967, and had never been divorced. The court admitted into evidence a certified copy of the 1967 marriage license, and on the basis of the evidence, overruled the motion in limine.

During trial, the prosecution introduced appellant's gun into evidence. The prosecution also introduced testimony that a fingerprint taken from the bottle found beneath Neeley's body was identical to a fingerprint sample taken from Willie Turner. One of the children residing at appellant's home testified that on the morning of December 21, 1978, appellant put the brown jacket he was wearing the night before into a garbage bag.

Earlier that month, appellant had told Michael Cooper that he was looking for a place to "hustle", and noted that the High Pockets Liquor Store would be a good target. On December 21, 1978, one day after the murders, Cooper overheard appellant say to Turner, "I wasted those two punk a_____ mother f_____." Two weeks after that, appellant told Cooper he had pulled a "hustle" at a liquor store in Caruthersville. Still later, appellant told Cooper he had "wasted those two dudes" during the robbery because they were "giving him some kind of hassle."

Appellant testified in his own defense that he had left his home in Steele at about 7:15 p. m. on December 20, 1978, and had gone to a bar, after which he returned home. Before objection from the prosecutor, he attempted to testify that Francis had been coerced by the prosecutor into testifying falsely, and that Cooper and the child also had been lying.

The jury found appellant guilty of capital murder on both counts. At the end of the second or sentencing stage of the bifurcated trial the jury returned a verdict that it was unable to agree on punishment. The court then sentenced appellant to two terms of life imprisonment without eligibility for parole for fifty years. This appeal followed.

I

We first consider appellant's contention that the information by which he was charged was insufficient to inform him of the nature of the offenses charged. This point was raised in a late filed pro se brief. We consider the allegation of error under Rule 30.20 and Rule 23.11. The information was worded as follows:

COUNT I: Now comes Michael B. Hazel, Prosecuting Attorney, within and for the county of Pemiscot, Who in this behalf prosecutes for and in the name of the State of Missouri, and upon his official oath informs the Court that on or about the 20th day of December, 1978, in the City of Caruthersville, County of Pemiscot, State of Missouri, the defendants, Johnny Mitchell and Willie Ray Turner, caused the death of William F. Parker by stabbing him; and the defendants intended to take the life of William F. Parker; and the defendants knew that they were practically certain to cause the death of William F. Parker; and that the defendants considered taking the life of William F. Parker and reflected upon the matter coolly and fully before doing so;

Count II was identical to Count I, except that the name of the victim was changed.

This information was filed March 3, 1979, after the date on which MACH–CR became effective. Those pattern charges, however, are recommended and not required. MACH–CR 1.00. The sufficiency of this, or any, information is governed by Rule 23. In *State v. Downs*, 593 S.W.2d 535 (Mo.1980), this Court stated the test for the sufficiency of an information as follows:

The fundamental test of the sufficiency of an information is whether or not it states the essential elements of the offense charged so that the defendant is adequately informed of the charge against him and the final disposition of the charge will constitute a bar to further prosecution for the same offense.

593 S.W.2d at 540; *Merrill v. State*, 576 S.W.2d 561, 562 (Mo.App.1978); *State v. Healey*, 562 S.W.2d 118, 129–30 (Mo.App. 1978). The language contained in this information is essentially the same as that required to be used for submission of a capital murder charge to a jury. MAI–CR 15.02. Although it did not exactly follow the language of the statute, it set out each element of the offense charged. *Cf.* § 565.-001, RSMo 1978, with MAI–CR 15.02. For this reason, we hold that the information

did adequately inform appellant of the offense with which he was charged.

Appellant also contends that the information was defective because it did not contain either the section of the statutes alleged to have been violated or the section of the statutes fixing the penalty therefor, as required by Rule 23.01. Rule 23.11, however, provides that no information should be held invalid which does not prejudice the defendant's substantial rights as long as it fully informs him of the offense charged.

■ We note that appellant filed with the trial court a "motion to quash information". It is extremely difficult for us to comprehend how appellant could, in his motion to quash, assert that "The statutes on which the information is based, § 565.001, 565.008, 565.012, and 565.014, R.S.Mo.1978, are [unconstitutional] . . .," and now claim that he is prejudiced by their omission from the information. We have no doubt that he both was advised of, and understood, the nature of the offenses with which he was charged. We find no prejudice to the substantial rights of the appellant. *State v. Umfleet,* 587 S.W.2d 612, 617 (Mo.App. 1979); *State v. Tierney,* 584 S.W.2d 618, 622 (Mo.App.1979); Rule 23.11.

## II

■ Appellant contends the capital murder verdict directing instructions[2] were not in compliance with the applicable rules.[3] Appellant argues that MAI–CR 15.02 should not have been modified by MAI–CR 2.12 because MAI–CR 15.02 is applicable under the law to the facts in this case, and should have been given to the exclusion of any other on the same subject. Rule 28.-02(a) requires that instructions from the 2.00 series of MAI–CR be given, "whether requested or not, where applicable under the law to the facts. . . ." Note 5 under MAI–CR 2.10, given in this case as Instruction No. 4, directs that MAI–CR 2.12 or 2.14 "should be used where it is not clear from the evidence whether defendant acted alone or with another or others." From the evidence presented in this case, the jury could find either that appellant acted alone in committing the offense, or that he acted "with another". Therefore, modification of MAI–CR 15.02 by MAI–CR 2.12 was proper. *State v. Buffington,* 588 S.W.2d 512, 515 (Mo.App.1979); *State v. Davis,* 559 S.W.2d 602, 604 (Mo.App.1977); Rule 28.02(a).

Appellant also contends the verdict directing instructions erroneously authorized the jury to find appellant guilty if it found that "defendant or another" committed the act with the required mental state. There is no merit in this argument. "All persons who act together with a common intent and purpose in the commission of a crime are equally guilty, if they share consciously in the criminal act as something they intend to

2. Instruction No. 6:
    *INSTRUCTION NO. 6*
    As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
    First, that on or about December 20th, 1978, in the County of Pemiscot, State of Missouri, the defendant or another caused the death of William F. Parker by stabbing him, and
    Second, that the defendant or another intended to take the life of William F. Parker, and
    Third, that the defendant or another knew that he was practically certain to cause the death of William F. Parker, and
    Fourth, that the defendant or another considered taking the life of William F. Parker and reflected upon this matter coolly and fully before doing so, and
    Fifth, that the defendant acted either alone or knowingly and with common purpose to-

gether with another in the conduct referred to in the above paragraphs, then you will find the defendant guilty under Count I of capital murder.
    However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions you must find the defendant not guilty under Count I of that offense.
    (MAI–CR 15.02–2.12 submitted by the State) Instruction No. 9 was identical, except that the name Pierce Neeley was substituted for William Parker.

3. The motion for new trial filed in the trial court did not include any complaint regarding the instructions, as required by Rule 28.03. Therefore, our examination is for "manifest injustice". *State v. Sanders,* 541 S.W.2d 530, 533 (Mo. banc 1976); *State v. Newman,* 514 S.W.2d 527, 527 (Mo.1974); Rule 29.12(b).

bring about." *State v. Goodman*, 482 S.W.2d 490, 492 (Mo.1972); *State v. Thomas*, 595 S.W.2d 325, 328 (Mo.App.1980); *State v. Collins*, 520 S.W.2d 155, 157 (Mo. App.1975). *Cf. State v. Dodson*, 556 S.W.2d 938, 950 (Mo.App.1977); *State v. Lute*, 608 S.W.2d 381 (Mo. banc 1980). In paragraph No. 5 of both instructions, the jury was required to find that defendant, "acted either alone or *knowingly and with common purpose together* with another in the conduct referred to in the above paragraphs...." MAI–CR 2.12 (emphasis added). By its verdict, the jury found that appellant either alone, or in concert with another with whom appellant shared a common intent and purpose, engaged in the conduct submitted in the preceding paragraphs of the instructions. The jury thereby found each element necessary to support a conviction of capital murder. § 565.001, RSMo 1978.

We do not agree with appellant that the use of the phrase "defendant or another" in the instructions confused or misled the jury. The evidence at trial did not suggest the involvement of any person other than Willie Turner, and neither the prosecutor nor defense counsel suggested any other person's involvement. We find no error in the capital murder verdict directing instructions.

### III

Appellant next contends the trial court erred in overruling an objection made by defense counsel during the prosecutor's closing argument. During closing argument, defense counsel contended that the times given by the various state witnesses were not consistent. Counsel told the jury that, "[i]f you believe all of what the Prosecutor is putting on, it simply will not add up."

During the prosecutor's final argument in rebuttal, the following exchange occurred:

MR. HAZEL: Ladies and gentlemen, I'd like to comment on some of the defense attorney's arguments here. One thing that you have to consider is that a defense attorney's argument can some-

times be compared to an octopus. It's like an octopus spews out this black ink.

MR. BUCKLEY: Your Honor, I object to the characterization of my argument in this term.

THE COURT: Very well, we will sustain the objection.

MR. HAZEL: The defense attorney talks to you about all this business about the time, so and so said this happened at this time, and the other witness said at the other time. You recall, nobody was looking at their watch. Everybody just testified they were giving their best judgment as to what time everything occurred. That's just a smoke screen.

MR. BUCKLEY: Your Honor, I object to the term "smoke screen." He is impuning [sic] my character.

THE COURT: Now, just a second, Mr. Buckley. We'll overrule your objection."

The propriety of oral arguments is a matter left within the discretion of the trial court. Appellate courts will reverse for such an error only if that discretion is clearly abused. *State v. Treadway*, 558 S.W.2d 646, 650 (Mo. banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978), *overruled on another ground, Sours v. State*, 593 S.W.2d 208 (Mo. banc 1979), *vacated sub nom., Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980), *on remand, Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980); *State v. Wright*, 515 S.W.2d 421, 432 (Mo. banc 1974); *State v. Neal*, 591 S.W.2d 178, 183 (Mo.App.1979). Both the prosecution and the defense may comment on the evidence and on the arguments of counsel. *State v. Hale*, 371 S.W.2d 249, 256 (Mo.1963); *State v. Murrell*, 555 S.W.2d 651, 652 (Mo.App.1977).

Appellant has not demonstrated an abuse of the trial court's discretion, and we do not believe the comment and the court's ruling thereon improperly influenced the jury.

### IV

Appellant's final contention of error is directed at the manner in which the jury was selected. Before voir dire began, ap-

pellant's counsel moved "to not allow questions to the jury as to their death penalty views." This motion was overruled, and the prosecutor and defense counsel then agreed that the veniremen would be questioned on the death penalty in small panels, ranging in size from six to eight people.

During this stage of the voir dire, the prosecutor asked the panel, "Is there anyone who, no matter what the facts in evidence, could not bring back the death penalty?" Venireman Abernathie and venirewoman Winder responded affirmatively to this question. Upon further questioning by the prosecutor, both Abernathie and Winder clearly indicated that they would automatically exclude the death penalty as a possible punishment, regardless of the circumstances. During questioning by defense counsel, both Abernathie and Winder clearly indicated that their views on the death penalty would not prevent them from impartially considering the issue of guilt or innocence. Upon questioning by the trial court, Abernathie and Winder again unequivocally stated that they would automatically exclude the death penalty from their consideration, regardless of the circumstances.

■ The prosecutor moved to strike venireman Abernathie and venirewoman Winder for cause pursuant to § 546.130, RSMo 1978.[4] *See State v. Pinkston*, 336 Mo. 614, 619, 79 S.W.2d 1046, 1049 (1935). Abernathie was stricken for cause, and defense counsel and the prosecutor agreed that Mrs. Winder should be excused because of a medical problem that would make it diffi-

cult for her to sit long periods without pain. No objection was made to the exclusion of venireman Abernathie from the panel, and no timely motion was made to quash the panel. No error was preserved for review. *State v. Sockel*, 485 S.W.2d 393, 396–97 (Mo.1972). Our review is limited to examination for plain error under Rule 29.12(b), (formerly Rule 27.20(c)). *State v. Mountjoy*, 585 S.W.2d 98, 102 (Mo.App. 1979).

■ The first argument that appears in appellant's brief is that by excluding from jury service those who would never impose the death penalty, a jury was created that was less than neutral with respect to the appropriate penalty upon conviction. Appellant relies on *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), which held:

a *sentence of death* cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be *put to death* at the hands of a tribunal so selected.

391 U.S. at 522–23, 88 S.Ct. at 1776–77 (emphasis added and footnotes deleted). It is clear that the *Witherspoon* holding only applies when a sentence of death is returned by the jury.[5] In the present case the jury was unable to agree on the appropriate punishment. The trial court then sentenced appellant to two consecutive terms of life imprisonment. Since the jury

4. Section 546.130, RSMo 1978, provides:
Persons whose opinions are such as to preclude them from finding any defendant guilty of an offense punishable with death, shall be ineligible to serve as jurors on the trial of an indictment or information charging any such offense, unless such disqualification is waived by the representative of the state when selecting the jury in any such case.

5. *Witherspoon v. Illinois*, 391 U.S. 510, 522 n.21, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968); *Bumper v. North Carolina*, 391 U.S. 543, 545, 88 S.Ct. 1788, 1789, 20 L.Ed.2d 797 (1968). Missouri follows this rule. *Ginnings v. State*, 506 S.W.2d 422, 423–24 (Mo.1974);

*State v. Jackson*, 506 S.W.2d 424, 427 (Mo. 1974); *State v. Wallace*, 504 S.W.2d 67, 70 (Mo.1973), *cert. denied*, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 76 (1974); *State v. Adams*, 497 S.W.2d 147, 153 (Mo.1973); *State v. Crow*, 486 S.W.2d 248, 251 (Mo.1972); *State v. Richards*, 467 S.W.2d 33, 36 (Mo.1971); *State v. Quinn*, 461 S.W.2d 812, 814–15 (Mo.1970); *State v. Coyne*, 452 S.W.2d 227, 228 (Mo.1970); *State v. Warters*, 457 S.W.2d 808, 812 (Mo.1970); *State v. Franklin*, 459 S.W.2d 314, 316 (Mo. 1970); *State v. Pollard*, 447 S.W.2d 249, 251–52 (Mo.1969); *State v. Walker*, 525 S.W.2d 826, 829 (Mo.App.1975).

did not return a death verdict, *Witherspoon* does not apply.

The second argument that appears in appellant's brief is that by excluding those who would never impose the death penalty from jury service during the guilt determination phase of the trial, a jury was created that was less than neutral with respect to guilt; *i. e.* a jury was created that is conviction prone. In *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) the Court discussed a qualification to the *Witherspoon* holding, whereby persons who would automatically exclude the death penalty from their consideration could be excluded from jury service consistent with the sixth amendment, as incorporated by the fourteenth.[6] The *Adams* case stated that this qualification was

> clearly designed to accommodate the State's legitimate interest in obtaining jurors who could follow their instructions and obey their oaths.... A juror wholly unable even to consider imposing the death penalty, no matter what the facts of a given case, would clearly be unable to follow the law ... in assessing punishment.

448 U.S. at 44, 100 S.Ct. at 2525, 65 L.Ed.2d at 589. Because of this legitimate state interest, the Court concluded that "the State may bar from jury service those whose beliefs about capital punishment would lead them to ignore the law or violate their oaths." 448 U.S. at 50, 100 S.Ct. at 2529, 65 L.Ed.2d at 593. Under § 565.008.1, RSMo 1978, a person convicted of capital murder, § 565.001, RSMo 1978, can receive either the death penalty or a penalty of imprisonment for life without eligibility for parole or probation for fifty

years. Venireman Abernathie, in stating that he would not consider imposing the death penalty under any circumstances, was declaring an intent to ignore the provision for the death penalty under Missouri statute. Thus, *Adams* states it is within the legitimate interest of the state to provide for his disqualification.

The third argument that appears in appellant's brief is that by excluding a "distinctive, sizeable and coherent" group of the community from participation in his jury, there is a denial of his right to be tried by a jury representing a cross section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 530, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975). In *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), the Court set out three elements that establish a prima facie violation of the fair cross section requirement. These are: (1) the persons excluded from jury service must be members of a " 'distinctive' group in the community"; (2) the representation of this group in venires is "not fair and reasonable in relation to the number of such persons in the community"; and (3) the underrepresentation is caused by a "systematic exclusion of the group in the jury-selection process." 439 U.S. at 364, 99 S.Ct. at 668. The Court then provided that the state may rebut this prima facie case by showing "a significant state interest ... manifestly and primarily advanced by those aspects of the jury-selection process ... that result in the disproportionate exclusion of a distinctive group." 439 U.S. at 367–68, 99 S.Ct. at 670–71.

Appellant has failed to meet this test. First, appellant has presented no evidence that those who would never impose the death penalty are a " 'distinctive' group in

6. The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote *against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings....* We repeat ... that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from

which the only veniremen who were in fact excluded for cause were those who made unmistakably clear ... that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that *might be developed at the trial of* the case before them....
*Witherspoon v. Illinois,* 391 U.S. 510, 522 n.21, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968) (emphasis in original).

the community." 439 U.S. at 364, 99 S.Ct. at 668. Second, appellant has presented no evidence showing "that the representation of this group . . . is not fair and reasonable in relation to the number of such persons in the community." 439 U.S. at 364, 99 S.Ct. at 668. Third, assuming *arguendo* that appellant did present a prima facie case under *Duren,* we think there is a "significant state interest" behind disqualifying veniremen who would never impose the death penalty in capital murder cases; *i. e.* to insure that jurors are selected who can follow the law. *See Spinkellink v. Wainwright,* 578 F.2d 582, 597 (5th Cir. 1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).

The judgment is affirmed.

DONNELLY, MORGAN and HIGGINS, JJ., concur.

RENDLEN, J., concurs in result.

SEILER, J., concurs in result in separate opinion filed.

BARDGETT, C. J., concurs in separate opinion of SEILER, J.

SEILER, Judge, concurring in result.

One argument advanced by defendant is that by excluding those who would never impose the death penalty from jury service during the guilt determination of the trial, a jury was created that was less than neutral with respect to guilt, i. e., a jury was created that is conviction prone. The principal opinion disposes of this contention by citing *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), holding that it is within the legitimate interest of the state to provide for disqualification of a venireman who would not consider the death penalty under any circumstances.

Granted, but it still may be the fact that a jury qualified as this jury was is less than neutral with respect to guilt. The subject has recently been discussed in detail in *Hovey v. Superior Court of Alameda Cty.,* 28 Cal.3d 1, 168 Cal.Rptr. 128, 616 P.2d 1301 (Cal.1980), which reviews the studies on the subject since the *Witherspoon* case. The results of the studies are consistently to the effect that such juries are less than neutral. The difficulty is that I am unable to offer any suggestion as to what to do about it.

Therefore, since the defendant did not receive the death penalty, I concur in the result reached in the principal opinion.