**STATE of Missouri, Respondent,**

**v.**

**Walter G. FISHER, Jr., Appellant.**

**No. WD 40865.**

Missouri Court of Appeals,
Western District.

May 30, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1989.

Application to Transfer Denied
Aug. 1, 1989.

John Vohs, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and CLARK and FENNER, JJ.

CLARK, Judge.

Walter G. Fisher, Jr. was convicted by a jury of the crimes of second degree murder and armed criminal action. He was sentenced to consecutive terms of life imprisonment and one hundred years.

The evidence, consistent with the verdict proved that on the night of October 29–30, 1986, nineteen year old Kimberly Brown died in her apartment in Kansas City as a result of approximately eighteen stab wounds to her chest and back. The body was discovered by a maintenance man who called at the apartment the morning of October 30 to make furnace repairs.

Brown shared the apartment with Elise Sachs who was employed at a Wendy's restaurant. Sachs had become acquainted with appellant at the restaurant where appellant also worked. On October 29, 1986, Sachs invited appellant to have dinner with her and Brown at the apartment. After dinner, appellant, Sachs and Brown consumed alcoholic beverages and smoked a marijuana cigarette. Brown eventually retired to the bedroom and appellant slept with Sachs in the living room.

The next morning, Sachs left the apartment for school leaving appellant and Brown in the apartment, both asleep. Sachs next saw appellant at Wendy's about noon. He told her Brown had dropped him off at a bus stop. Unknown to Sachs at the time, however, Brown's body had been discovered in the apartment earlier, at approximately 9:00 a.m.

The police arrived at Wendy's at mid-afternoon and took Sachs and appellant to headquarters for questioning. After relating several conflicting accounts of his activities that morning, appellant eventually confessed that when he and Brown awakened the morning of October 30, there had been an argument and appellant had stabbed Brown repeatedly with a kitchen knife. After the slaying, appellant left the apartment taking the keys to Brown's car. He drove to a location two blocks from his home in Kansas City, Kansas where he parked the car. Appellant then went home, changed clothes and eventually reported for work at Wendy's. Brown's car was recovered by the police from the location where appellant stated it had been left.

Appellant's defense was diminished mental capacity.

In the first two points appellant raises as asserted trial error, he complains of the trial court's failure to excuse venirepersons Hensley, Meyers and McCue when appellant challenged them for cause, and also

the release of venireperson Grimm based on the state's challenge. In the cases of Hensley, Meyers and McCue, appellant argues that they should have been excused because voir dire inquiry disclosed them to be prone to impose the death penalty in capital cases. Grimm, to the contrary, expressed doubt that he could impose such a sentence. Appellant claims this did not disqualify Grimm and he should have remained for possible service as a juror.

■ Although the state did seek the death penalty in this case and the qualification of jurors would therefore be subject to the standard announced in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), appellant was not convicted of first degree murder, but of second degree murder to which the death penalty does not apply. In *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), the court ruled that the holding in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), upon which the court elaborated in *Wainwright*, did not apply when the jury does not impose a death sentence. Once the jury acquits the defendant of the greater offense for which capital punishment may be imposed, it becomes irrelevant whether the venirepersons were or were not death penalty qualified.

The Missouri Supreme Court recognized this proposition in *State v. Mitchell*, 611 S.W.2d 223, 228 (Mo. banc 1981), when it cited *Witherspoon* and *Bumper* and other cases. In *Mitchell*, the jury found the defendant guilty of capital murder, but was unable to agree on punishment. The court sentenced the defendant to life terms. The opinion held that *Witherspoon* had no application in a case when the jury does not return a sentence of death. *Mitchell*, 611 S.W.2d at 228–29.

At the time the opinion in *Mitchell* was rendered, *Wainwright* had not yet been decided and therefore its holding was not controlling on the *Mitchell* court. We conclude, however, that the result would be the same were a similar case to have been presented after *Wainwright*.

*Wainwright*, and the earlier case of *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), did not affect the decision in *Bumper* on the question of when a defendant may claim prejudice under the Sixth and Fourteenth Amendments on account of juror qualification procedures in capital cases. *Wainwright* merely reaffirmed *Adams* in its holding that the *Witherspoon* doctrine should be applied to exclude venirepersons whose views on capital punishment would prevent or substantially impair the performance of the duties of a juror in accordance with his instructions and oath. *Adams*, 448 U.S. at 45, 100 S.Ct. at 2526. As respects death penalty qualification, *Wainwright*, *Adams* and *Witherspoon* are relevant only in cases where the death penalty has been imposed. There is no basis to contend that *Wainwright* has altered the controlling effect of *Mitchell* in the present case.

It would, of course, be possible to argue that a venireperson who expressed an inability to follow the court's instructions would be disqualified generally from serving as a juror. In such an instance, it would be immaterial whether the case involved a capital offense. Here, such a claim obviously is not made as to venireperson Grimm who was excused. Venirepersons Hensley, Meyers and McCue were not, but appellant does not question their qualifications in that regard, only that they were sympathetic to and predisposed in favor of the death penalty. Their responses to voir dire otherwise indicate an expression of willingness and ability to follow the court's instructions. Appellant's points one and two are denied.

■ In his third point, appellant takes exception to the following statement made by the prosecuting attorney during voir dire, and to the trial court's ruling:

Because of the state of the law, the State may not introduce evidence of the character of the victim or the impact that a crime would have on the victim's family.

Appellant cites *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), for the proposition that victim impact statements are not permissible in capi-

tal cases due to the risk that the death penalty may be imposed on considerations which are not relevant to the sentencing process. In this case, he says the statement made to the panel raised the inference that if information about the victim could be revealed, it would have shown the victim in a favorable light. This was prejudicial to the defendant's case and appellant contends the court erred when it denied a mistrial.

*Booth* has no bearing on the present case. In *Booth,* the jury found the defendant guilty on two counts of first degree murder. In the sentencing phase of the trial, the state presented a victim impact statement as required by Maryland law describing the personal characteristics of the victims and the consequences to their families. The jury imposed the death sentence as to one felony and life imprisonment as to the other. The supreme court held the Maryland statute invalid under the Eighth Amendment because the information about the victim was irrelevant to the jury's consideration of whether to impose capital punishment.

In the present case, the jury was not called upon to consider imposition of the death penalty, it having acquitted appellant of the charge of first degree murder. *Booth* therefore has no application. Moreover, the trial judge sustained the defense objection to the comment, instructed the jury to disregard it and the subject was not pursued any further. Any prejudice was thereby removed. *State v. Scrivner,* 676 S.W.2d 12, 15 (Mo.App.1984). The court did not err in refusing defendant's request for a mistrial.

■ The next argument on an asserted point of error refers to the following comment made by the prosecuting attorney in his closing remarks to the jury:

> The Judge read you instructions for Murder in the First Degree, Murder Second Degree and Voluntary Manslaughter. Those are standard lesser included offenses of Murder in the First Degree.

Appellant makes the somewhat obscure contention that this line of argument minimizes the importance of lesser included offenses by suggesting that instructions as to such offenses are always given, regardless of what the evidence may be. He says it was not enough that the court sustained his objection, but that a mistrial should have been granted as he requested.

A conviction will be reversed for improper argument only if it is highly likely it had a decisive impact on the jury. *State v. Stuckey,* 680 S.W.2d 931, 937 (Mo. banc 1984). In this case, even granting to appellant the potential for adverse effect which he ascribes to the prosecutor's comment, a doubtful premise, there was demonstrably no such effect on this jury which acquitted appellant of first degree murder and convicted him of the lesser offense. There was no impact of the argument on the jury and therefore no prejudice to appellant.

Even were the above conclusion not compelled by the verdict, however, appellant's claim of prejudice fails because the trial court sustained the objection to the prosecutor's argument and instructed the jury to disregard it. Any potential for prejudice was thereby eliminated. *State v. Scrivner,* 676 S.W.2d at 15.

Appellant's final point concerns testimony he sought to elicit from one Preston, the minister of a Baptist church. Preston had previously testified that appellant had made some inappropriate comments in church on occasion and he requested that the congregation pray for him. The minister was then asked if he had an opinion as to whether appellant had an emotional problem. The prosecutor objected and Preston was not allowed to answer. The claim is that appellant was erroneously deprived of the opportunity to present evidence corroborating his defense of mental disease or defect.

■ Appellant's contention is without merit. The defense of diminished capacity, which appellant sought to present in this case, must be based on the existence of a mental disease or defect. *State v. Weatherspoon,* 716 S.W.2d 379, 384 (Mo.App. 1986), *cert. denied,* 479 U.S. 1095, 107 S.Ct. 1313, 94 L.Ed.2d 167 (1987). It was apparent that witness Preston had not been

shown to be qualified as an expert witness entitled to give an opinion as to whether appellant was suffering from a mental disease or defect. Moreover, emotional stress or upset is not a fact associated with mental disease or defect, but a transitory condition not shown by any evidence to have been exhibited by appellant at the time the murder of Brown was committed. The court properly sustained the objection to the question put to witness Preston.

The judgment is affirmed.

All concur.