**STATE of Missouri, Respondent,**

v.

**Clarence O. TAYLOR, Appellant.**

**No. 16152.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 13, 1989.

Anne E. Hall, Public Defender, Springfield, for appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

A jury found Clarence O. Taylor ("defendant") guilty of two counts of involuntary manslaughter, § 565.024, RSMo 1986, and assessed punishment at four years' imprisonment on each count. The trial court imposed those sentences, ordering that they run consecutively.

Defendant appeals, briefing two points. The first avers the trial court erred in failing to sustain defendant's motion to suppress the result of a Breathalyzer test; the second asserts the trial court erred in denying defendant's motion for mistrial based upon the prosecutor's remarks during the cross-examination of a witness by defendant's lawyer.

As the sufficiency of the evidence to support the verdicts is unchallenged,[1] we synopsize only the evidence necessary to resolve the issues on appeal.

On August 8, 1987, a few minutes before 9:00 p.m., defendant was driving a pickup east on Mt. Vernon Street in Springfield. Defendant turned the pickup left (north) at the intersection of Golden Street, into the path of a motorcycle westbound on Mt. Vernon. The motorcycle carried two persons: the driver, Randall Fitzpatrick, and a passenger, Kimberly Dawn Evans. The motorcycle collided with the pickup, killing Mr. Fitzpatrick and Ms. Evans.

A witness to the accident testified that after it occurred he opened the pickup's door and saw defendant sitting in the driver's seat with blood coming from his mouth. The first police officer to arrive at the scene saw blood on defendant's mouth. The officer explained, "I noticed there was ... blood on [his] lips and there appeared to be a blood stain under his feet on the ground." Someone told the officer defendant had been vomiting blood.

Another officer testified that when he first observed defendant at the accident scene defendant was "spitting blood."

Officer Rick Headlee arrested defendant at the accident scene for driving while intoxicated and transported him to police headquarters where Headlee had defendant perform three "field sobriety tests." Headlee then administered a "breath test" to defendant using a Breathalyzer model 900.

Prior to trial defendant filed a motion to suppress the result of the Breathalyzer test on two grounds: (1) there was no probable cause for his arrest, and (2) Headlee failed to comply with the requirements for administering the test in that a person tested must be observed for at least 15 minutes beforehand, during which there is to be no oral intake of any material. The motion averred defendant advised Headlee that defendant was still bleeding from the mouth just prior to taking the test but Headlee advised defendant to take it anyway.

In his brief, defendant cites 13 CSR 50-140.060[2] which provided:

"(1) In using Breathalyzer Models 800, 900 and 900A:

(A) Observe subject for at least fifteen (15) minutes—no smoking or oral intake of any material during this time...."

---

1. Defendant contends the evidence is insufficient only if the result of the Breathalyzer test is excluded.

2. "CSR" refers to the Code of State Regulations, the contents of which we may judicially notice. § 536.031.5, RSMo 1986; *State v. Webb*, 646

S.W.2d 415, 417 (Mo.App.1983). Effective August 15, 1986, prior to all times pertinent herein, 13 CSR 50–140.060 was renumbered 19 CSR 20–30.060. 11 Mo.Reg.1941–42 (Aug. 15, 1986). *See: State v. Gideon*, 766 S.W.2d 153, 154 (Mo. App.1989).

The trial court conducted a pretrial hearing on the motion to suppress, at which Headlee testified defendant's tongue was bleeding "right after" they arrived at police headquarters. According to Headlee, he asked defendant whether he wanted to see a doctor and defendant said no. Headlee recounted that while he was waiting for defendant's tongue to stop bleeding he (Headlee) used the time to conduct the field sobriety tests and complete the alcohol influence report.

Headlee testified that at 10:05 p.m., he checked defendant's tongue and saw it had stopped bleeding. Seventeen minutes later, at 10:22, Headlee administered the Breathalyzer test. Headlee's testimony:

"Q. And during those seventeen minutes did you have a chance to observe the defendant?

A. Yes, I did.

Q. Do you know whether or not he had anything in his mouth, including blood, during that time?

A. No, not from 10:05, nothing, including blood.

Q. He did not have blood in his mouth at any time any of those seventeen minutes?

A. No."

Headlee added that prior to the test he looked at defendant's tongue again "just to make sure it hadn't started up." Headlee's testimony:

"Q. ... At the end of the seventeen minute period we've been talking about did you look into [defendant's] mouth?

A. Yes, sir.

Q. What, if anything, did you see other than the tongue?

A. It was cut, it wasn't bleeding.

Q. Was there any blood?

A. No, sir.

. . . .

Q. He didn't hold his mouth out for you to look at it for that entire seventeen minutes?

A. No, sir.

Q. But you did have the opportunity to watch him, including watching his face, and at some point during the seventeen minutes see that his mouth was open?

A. Yes, sir.

Q. And at no time during the seventeen minutes did you notice any blood?

A. No.

Q. You did not notice any blood during those seventeen minutes?

A. No, sir."

Defendant, testifying at the hearing on the motion to suppress, stated his tongue was cut in the collision, and that just before he blew into the Breathalyzer he told Headlee he was spitting blood. According to defendant, Headlee replied it "didn't make any difference." Defendant denied Headlee looked at defendant's tongue before defendant blew into the Breathalyzer.

At the conclusion of the hearing the trial court overruled the motion to suppress.

At trial Headlee's testimony paralleled his testimony at the suppression hearing. Cross-examination of Headlee produced the following dialogue, underscored by defendant in support of his first point on appeal:

"Q. And between 10:05 and 10:22 did you look at any other time just before you gave the test?

A. Only at 10:05 and 10:22.

Q. So every two or three minutes you didn't look at his tongue to see if it was bleeding in between those two times?

A. No, sir, I did not."

■ Defendant's first point asserts the trial court erred in failing to sustain the motion to suppress in that Headlee "failed to observe the defendant for a fifteen minute period without a foreign substance or a substance in his mouth prior to giving the test." Defendant maintains that particles of blood coughed up by a person tested on a Breathalyzer model 900 may cause the instrument "to give an inaccurately high reading."

■ Our first observation is that the point was not preserved for appellate review. At trial, when the prosecutor offered in evidence the paper showing the result of the Breathalyzer test, defendant's

lawyer[3] objected that "there was no probable cause for the arrest and he's not an expert in this area." This colloquy ensued:

"The Court: Overruled. Go ahead.

[Headlee]: This record shows thirteen hundredths of one percent blood alcohol content.

[Prosecutor]: Thank you. Again, Your Honor, I would offer this ... Exhibit....

The Court: Any · .tion?

[Defendant's lawyer]: Just the objection that I just noted."

The trial court overruled the objection and received the exhibit in evidence.

When a motion to suppress evidence is denied and the evidence is subsequently offered at trial, the accused must object at that time to admission of the evidence with a proper statement of the reasons for the objection in order to preserve the issue for appellate review. *State v. Stidum,* 684 S.W.2d 448, 450[3] (Mo.App.1984); *State v. Howard,* 564 S.W.2d 71, 74[1] (Mo.App. 1978). Here the ground asserted in defendant's first point on appeal appeared in the motion to suppress but was not mentioned at trial when the prosecutor offered the result of the Breathalyzer test in evidence. The objections at trial were on different grounds than defendant's first point on appeal. Where a trial objection to the admission of evidence is based upon a specific ground, and a different reason for the objection is asserted on appeal, nothing is preserved for review. *State v. Trice,* 747 S.W.2d 243, 246[1] (Mo.App.1988); *State v. Shepard,* 681 S.W.2d 473, 475[1] (Mo.App. 1984).

However, even had the point been preserved it would be unavailing. Our review of the trial court's ruling on the motion to suppress is limited to a determination of whether the evidence was sufficient to sustain its order. *State v. Baskerville,* 616 S.W.2d 839, 843[2] (Mo.1981). The weight of the evidence and credibility of the witnesses are questions for the trial court's

resolution. *State v. Boggs,* 634 S.W.2d 447, 453[4] (Mo. banc 1982).

Headlee's testimony, in sum, was that defendant's tongue was not bleeding at 10:05 p.m., that defendant took nothing into his mouth from that time until the Breathalyzer test was administered at 10:22 p.m., that just prior to the test defendant's tongue was not bleeding and there was no blood in his mouth, and that Headlee was in defendant's presence throughout the 17 minutes and at no time during that interval did Headlee notice any blood. That testimony, if believed by the trial court (as it evidently was), was sufficient to demonstrate that Headlee complied with the 15–minute pre-test observation requirement, and it supplied an adequate foundation for admission of the test result in evidence. The trial court was not obliged to believe defendant's testimony that he told Headlee he was spitting blood just before the test.

Defendant cites no case holding that Headlee was required to keep his eyes fixed on defendant's tongue for an unbroken 15–minute period immediately before administering the test. Defendant's argument goes to the weight, not admissibility, of the test result. Defendant's first point is without merit.

▮ The incident on which defendant's second point is based occurred during his lawyer's cross-examination of the pathologist who performed autopsies on the victims. Defendant's lawyer asked the pathologist about the results of tests of Ms. Evans' blood. The pathologist replied that the blood test for alcohol was negative but a urine test was positive for nicotine, amphetamine and marijuana. Further questioning established that none of those constituents had anything to do with Ms. Evans' death. Then, this:

"Q. ... And again so the jury is clear, this was not in your opinion a contributing factor to the death of Miss Evans?

A. That's correct.

**3.** The lawyer representing defendant in this appeal is not the lawyer who represented him at

trial.

[Prosecutor]: Why was it asked?

[Defendant's lawyer]: Your Honor, I'm going to object.

[Prosecutor]: It sounds like you already knew the answer.

[Defendant's lawyer]: Your Honor, can we approach the bench?"

A bench conference ensued, during which defendant's lawyer asked for a mistrial. He argued:

"[The prosecutor] obviously had that planned because he knew what I was going to ask before he ever went back to his seat. I asked the doctor if it was a part of what he reviewed before he signed off on the report and he said it was and I tried to make it clear to the jury it was not a part of the reasons he [sic] died and I think that it was—it could only be intended to try to make me look bad in front of the jury and try to impugn my character in front of the jury and I resent it and I think that it is improper to do that before the jury and I'm asking for a mistrial because I think that he has now put in their minds that I'm trying to mislead them."

The trial court denied the request for mistrial. Defendant's lawyer asked for no other relief.

Defendant's second point asserts the trial court erred in denying the motion for mistrial. Defendant insists that the prosecutor's remarks implied defendant's lawyer's question was not relevant and that he had no reason to ask it except to improperly bring before the jury the fact that nicotine, amphetamine and marijuana were present in Ms. Evans' body. Defendant argues that the prosecutor's remarks were improper and seriously undermined defendant's lawyer's credibility with the jury, thus denying defendant a fair trial.

Defendant cites no Missouri case in support of his second point, and he concedes there is little, if any, case law dealing with a prosecutor's outburst such as the one here.

The closest Missouri case we find is *State v. Mitchell*, 611 S.W.2d 223 (Mo. banc 1981), where the prosecutor, in final argument to the jury, compared the accused's lawyer's argument to an octopus spewing out black ink. An objection by the accused was sustained. The prosecutor then characterized the accused's lawyer's argument as "just a smoke screen." The accused's lawyer objected that the prosecutor was impugning his character. The trial court overruled the objection. On appeal the Supreme Court of Missouri affirmed, holding that the propriety of oral argument is a matter left within the discretion of the trial court, and that an appellate court will reverse a trial court's ruling on an objection to argument only if discretion is clearly abused. *Id.* at 227.

While the prosecutor's comments in the instant case came during the testimony of a witness instead of in closing argument, their tenor was the same as those in *Mitchell*, i.e., denigration of the tactics of defense counsel. The prosecutor's comments in the instant case, while amateurish and unprofessional, were no more egregious than those in *Mitchell*. If the trial court did not commit reversible error in overruling the accused's objection in *Mitchell*, the trial court in the instant case did not commit reversible error in denying defendant's motion for mistrial.

Defendant, in his brief, asserts that because the trial court failed to give any cautionary instruction to the jury, the prejudice from the prosecutor's remarks was never corrected. At trial, however, defendant's lawyer requested no relief other than a mistrial. Defendant cannot, therefore, convict the trial court of error for failing to admonish the jury to disregard the prosecutor's comments. *State v. Schneider*, 736 S.W.2d 392, 401 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988).

Defendant's second point is denied and the judgment is affirmed.

GREENE, J., and HOLSTEIN, Special Judge, concur.